UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT GENE HENDERSON,

                Plaintiff,        Civil Action No. 14-11978
                                        Honorable Judith E. Levy
                                        Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION TO GRANT THE
COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT [9]**

Plaintiff Robert Henderson ("Henderson") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). The Commissioner filed an unopposed motion for summary judgment [9] which has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.     RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Henderson is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's motion for summary judgment [9] be GRANTED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

## II. REPORT

### A. Litigation History

When Henderson commenced this action, he was represented by attorney Richard Doud of the firm Davidson, Breen, Doud, Steele & Ferguson, P.C. (the "Firm"). Doud filed a motion for summary judgment on Henderson's behalf on September 26, 2014. [8]. On April 18, 2015, attorney James Smith ("Smith") of the Firm moved to substitute into the action for attorney Doud on behalf of Henderson. [10].

On May 20, 2015, this action was transferred to a three-judge panel (the "Panel") to address the Firm's representation of Social Security claimants in the Eastern District of Michigan. [5/20/15 docket entry]. Pursuant to 15-AO-033, on June 9, 2015, the Panel administratively stayed this action. [11]. On October 19, 2015, pursuant to 15-AO-045, the Panel determined that affected cases (including this one) would be transferred back to the originally assigned judge, and that it would be each such judge's responsibility to determine when to lift the stay. [10/19/15 docket entry]. Accordingly, on November 6, 2015, United States District Judge Judith E. Levy issued an order lifting the stay in this matter and denying Smith's motion for substitution of counsel. [13].

The Court was later advised that the Firm had notified Henderson that he would have until December 30, 2015, to retain a new attorney and have that attorney file an appearance in this action. [14]. Henderson was also notified that if no such appearance was filed by December 30, 2015, the Court would consider Henderson to be continuing his appeal without legal representation, *i.e.*, that he would be representing himself in this action *pro se*. [*Id.*]. Because no new attorney appeared on Henderson's behalf, the Court deemed him to be representing himself *pro se*, ordered that his motion for summary judgment be stricken from the docket, and issued an

2

amended scheduling order. [16].¹  To date, Henderson has not filed a new motion for summary judgment and the Commissioner has informed the Court that she will rely on her original brief. [17].

### B. Procedural History

On October 13, 2011, Henderson filed an application for DIB, alleging a disability onset date of April 1, 2011. (Tr. 120-26). This application was denied initially on November 29, 2011. (Tr. 62-69). Henderson filed a timely request for an administrative hearing, which was held on October 4, 2012, before ALJ Regina Sobrino. (Tr. 33-60). Henderson, who was represented by attorney Aaron Lemmens, testified at the hearing, as did vocational expert Stephanie A. Lorey. (*Id.*). On December 27, 2012, the ALJ issued a written decision finding that Henderson is not disabled. (Tr. 19-29). On March 18, 2014, the Appeals Council denied review. (Tr. 1-4). Henderson timely filed for judicial review of the final decision on May 19, 2014. (Doc. #1).

### C. Framework for Disability Determinations

Under the Act, DIB is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

---

¹ In light of the fact that Henderson was proceeding *pro se*, the Court noted that, "his filing need not be in the form of a formal legal brief – rather, Henderson may simply advise the Court in writing as to why he believes the Commissioner's decision is in error." [*Id.*].

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 U.S. Dist. LEXIS 150240, at \*21 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps ….  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**D.     Background**

   *1.     Plaintiff's Reports and Testimony*

In an undated disability report, Henderson indicated that he suffers from bilateral carpal tunnel syndrome, heart issues, and bilateral hand, hip and knee ailments.  (Tr. 143).  Henderson reported that he stopped working on April 1, 2011, as a result of these conditions. (*Id.*).  With respect to his education level, Henderson completed the twelfth grade but never pursued any further studies.  (Tr. 144).  Prior to stopping work, Henderson was employed as a pre-press worker, production manager, and purchase orderer in the printing industry.  (*Id.*).  Henderson

stated that David Dobies, M.D., treated him for heart related ailments after he suffered a heart attack in 2008, including the performance of two stint procedures. (Tr. 146). He also noted that Michael Quinn, M.D., treated him for bilateral carpal tunnel syndrome and that Kevin Snyder, D.O., treated him for "hands, hips, knees, heart." (Tr. 148). At the time of the report, Henderson was taking Bytorin, Lopid, and Plavix for his heart condition along with Vicodin for pain relief. (Tr. 146).

In a function report dated November 7, 2011, Henderson stated that he lives in a private house with his wife. (Tr. 154). When asked to describe how his condition limits his ability to work, Henderson stated: "I have trouble with right hip, both hands and both knees causing pain. When I bend or kneel to[o] long and standing for long periods of time. Both hands tingle and go numb causing discomfort. My knees make it difficult to lift items at times. I have shortness of breath when I over exert myself." (*Id.*). His daily routine consists of brushing his teeth; taking medication; feeding his dogs; watching television for approximately three hours; retrieving the mail; and paying bills on the computer. (Tr. 155). Henderson reported that he can no longer play softball because he cannot run. (*Id.*). He also has trouble sleeping on account of constant knee pain, the uncomfortableness of his hand braces and tingling and numbness in his hands. (*Id.*). Henderson indicated that he needs assistance with putting on his socks, but that he is otherwise capable of feeding himself and attending to basic hygiene. (*Id.*). He reported that his wife generally prepares his meals for him, although she had performed this task before he stopped working. (Tr. 156). Henderson stated that he can perform household chores such as mowing the lawn, cleaning up after his dogs and washing dishes. (*Id.*). He is able to drive a car and goes grocery shopping with his wife once a week for approximately one hour. (Tr. 157). Henderson is capable of paying bills, counting change, and handling a checking and savings

5

account. (*Id.*). His main hobbies are watching television (daily) and playing cards (one time per week – "but must get [up] every hour and stretch out legs"), golf (two times per week – "with cart and now only nine holes not 18 anymore"), bowling (two times per month – but "after surgery none") and softball (he used to play ten times per month during the summer – currently does not play at all). (Tr. 158). Henderson visits regularly with family and friends and noted that he does not have any problems getting along with family, friends, or neighbors. (Tr. 158-59).

When asked to identify functions impacted by his condition, Henderson checked lifting, squatting, bending, standing, walking, kneeling, stair climbing and using his hands. (*Id.*). He noted that he can walk one-half of a mile before taking a break and that he needs to rest for five minutes before resuming. (Tr. 159). Henderson indicated that he has a reading disability, but that he can follow spoken instructions "very well." (*Id.*). He also stated that he handles stress "well-good" and changes in routine "good." (Tr. 160). Regarding his medications, Henderson reported that he suffers no side effects. (Tr. 161).

At the time of the October 4, 2012 hearing before the ALJ, Henderson stated that he was living with his wife and son. (Tr. 37). He testified that his former employer laid him off in April 2011 and, thereafter, he worked as an assistant softball coach for the Clio school system from April through June 2011. (Tr. 38-39). In that capacity, Henderson would conduct fielding drills with the team by "hitting the grounders," but he stopped because he "was hurting too much." (Tr. 39). Henderson stated that he could no longer work at his prior job because he suffers from carpal tunnel in both of his wrists and he can no longer walk around and climb stairs due to knee pain. (Tr. 39-40). He reported that he can walk continuously for no longer than a city block; he can stand for no longer than 15-20 minutes before he needs to sit; and that he can sit for a half hour before he needs to stand. (Tr. 40). Henderson estimated that he could lift approximately 20

pounds although his fine motor coordination is significantly impaired because his hands "fall asleep." (Tr. 41). He indicated that he has trouble reaching over his head and that he has difficulty bending and climbing stairs because of the pain in his waist and knees. (Tr. 42-43). Henderson recounted that he had a "total hip replacement" sometime in 1998 and that he receives periodic injections in his knee. (*Id.*). Consistent with his function report, Henderson further testified that he rides his lawnmower for about a half hour, although he takes 15-minute breaks to stretch out. (Tr. 43-44). He noted that he takes medicine for depression that makes him drowsy. (Tr. 44). Henderson also recounted that doctors placed stents in two of his arteries after he suffered a heart attack sometime in 2006. (Tr. 47).

On direct examination by his attorney, Henderson testified that his knee pain is a seven or eight on a scale from one to ten, particularly after he climbs stairs. (Tr. 48). He has problems with long-term memory, difficulty sleeping, and usually naps for about 45 minutes every day. (Tr. 49). Henderson further reported that his son typically assists him with lawn work. (Tr. 49-50).

### 2.    *Medical Evidence*

The Court has thoroughly reviewed Henderson's medical record. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3.    *Vocational Expert's Testimony*

Stephanie A. Lorey testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 51-49). The ALJ asked the VE to imagine a claimant of Henderson's age, education, and work experience who could not perform more than light work with the following limitations: the person should not climb ladders; should not have to kneel or

7

crawl; can only occasionally climb stairs, stop and crouch; limited handling, fingering and feeling; no exposure to hazards or vibrations; no driving as a work duty. (Tr. 53). The VE testified that the hypothetical individual would be capable of performing some of Henderson's past relevant work as a production manager and purchase orderer and could perform unskilled light work as an assembler (13,200 jobs), inspector (4,200 jobs) or sorter (4,100 jobs). (Tr. 54-55). The ALJ also inquired whether the imagined claimant would be able to perform Henderson's past relevant work with the following additional limitations: standing and walking no more than two hours in an eight-hour workday and simple routine work. (Tr. 55). The VE attested that such an individual could not perform any of Henderson's past relevant work nor any of the three aforementioned unskilled light jobs. (Tr. 55, 57). On cross-examination, Henderson's attorney asked the VE, "what is the percentage off task a person could be before it becomes work preclusive on an continuing, ongoing basis?" (Tr. 59). The VE responded, "[n]o more than 20 percent . . . in addition to breaks and lunch." (*Id.*).

### E. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Henderson is not disabled under the Act. At Step One, the ALJ found that Henderson has not engaged in substantial gainful activity since July 2011.[2] (Tr. 21). At Step Two, the ALJ found that Henderson has the severe impairments of coronary artery disease; degenerative disc disease; carpal tunnel syndrome; and depression. (Tr. 22). At Step Three, the ALJ found that Henderson's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 22-24).

---

[2] The ALJ found that Henderson engaged in substantial gainful activity from April through June 2011 since, as noted above, "he testified that he worked as an assistant softball coach for Clio Schools" during this period, and Henderson's earnings records confirmed that he made $4,267.00 for that three-month period of employment. (Tr. 21).

The ALJ then assessed Henderson's residual functional capacity ("RFC"), concluding that he is capable of performing light work, with the following limitations: no climbing of ladders or stairs; occasional stooping and balancing; no kneeling, crouching or crawling; frequent handling, fingering, and feeling; no exposure to hazards or vibration; no driving as a work duty; and simple, routine work. (Tr. 24).

At Step Four, the ALJ determined that Henderson is unable to perform any past relevant work. (Tr. 27). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Henderson is capable of performing a significant number of jobs that exist in the national economy. (Tr. 28-29). As a result, the ALJ concluded that Henderson is not disabled under the Act. (Tr. 29).

### F.     Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)

(internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("an ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'").

**G. Analysis**

In the interest of ensuring that Henderson's claim for benefits is fairly considered, even in

the absence of a supporting brief, the Court has independently examined the record, and evaluated the merits of the Commissioner's arguments (where were responsive to Henderson's initial arguments) to determine whether the ALJ's decision is supported by substantial evidence.

### 2. Substantial Evidence Supports the ALJ's Finding that Henderson Is Not Disabled

As set forth above, the ALJ found that Henderson has the RFC to perform light work with the following limitations: no climbing of ladders or stairs; occasional stooping and balancing; no kneeling, crouching, or crawling; frequent handling, fingering, and feeling; no exposure to hazards or vibration; no driving as a work duty; and simple, routine work. (Tr. 24-27). Based in part on the VE's testimony, the ALJ concluded that Henderson is not disabled under the Act because he is capable of performing a significant number of jobs that exist in the national economy. (Tr. 28-29).

#### A. Credibility

The ALJ reasonably discounted Henderson's allegations of disabling limitations because they were inconsistent with the objective medical evidence and the record as a whole. (Tr. 24-27). As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain, or other symptoms, rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain, or other symptoms, is in issue, after

11

the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians … and any other relevant evidence in the case record" to determine if the claimant's claims regarding the severity of his symptoms are credible. *Soc. Sec. Rul.* 96-7, 1996 SSR LEXIS 4, at *3 (July 2, 1996); *see also* 20 C.F.R. §416.929.

Here, the ALJ adequately discussed the objective medical evidence regarding Henderson's physical and mental impairments and reasonably explained why such evidence compelled a finding that his allegations of disability were not fully credible. (Tr. 24-26). As for Henderson's physical impairments, the ALJ noted that a May 12, 2011 stress echo test indicated "good exercise tolerance" and that Henderson achieved 10.4 METS and 89.29 percent of his maximum predicted heart rate. (Tr. 25, 200). A catheterization of Henderson's left heart showed a normal ejection fraction of 60 percent and mild diffuse disease of approximately 10 to 20 percent in the left anterior descending artery. (Tr. 25, 198). The catheterization also revealed normal arterial size and no mitral regurgitation. (Tr. 198). Henderson complained of hand tingling and numbness on several occasions, particularly at night or after cutting wood. (Tr. 25, 231). However, an August 15, 2011 examination of his wrists indicated full range of motion and normal strength (Tr. 25, 226). Similarly, Henderson demonstrated normal leg strength and full range of motion in his right lower leg after suffering a sports-related leg injury. (Tr. 25, 228-29). On September 4, 2011, Henry Hagenstein, D.O., performed an electromyography of the upper extremities and concluded that "there is evidence for severe carpal tunnel syndrome at the left wrist and moderate carpal tunnel at the right wrist." (Tr. 267). Later that month, Henderson visited Dr. Snyder complaining of intermittent bilateral anterior and bilateral medial knee pain,

which began three years earlier and steadily worsened. A physical examination revealed full range of motion and normal strength in both knees. (Tr. 25, 222-23). Dr. Snyder injected both of Henderson's knees with methylprednisolone and noted that he suffered from bilateral osteoarthritis. (Tr. 26, 224).

On October 5, 2011, Dr. Snyder treated Henderson for a contusion on his right leg after he was hit by a softball three to four weeks earlier. (Tr. 26, 220). The doctor drained Henderson's leg without any reported complications. (Tr. 26, 220). On November 9, 2011, Henderson presented with complaints of knee pain. (Tr. 26, 212). Dr. Snyder noted that Henderson suffered from degenerative joint disease in both knees. (Tr. 212). Again, physical examinations of both knees indicated no tenderness, full range of motion and normal motor function. (Tr. 26, 213-14). Henderson continued to complain of left knee pain in March 2012. (Tr. 26, 382). At this time, Dr. Snyder's treatment notes confirm that Henderson had received prior Synvisc injections in both of his knees. While the physical examination showed some signs of tenderness in his left knee, Henderson otherwise exhibited full range of motion and normal motor strength. (Tr. 26, 384). On June 6, 2012, Henderson presented with chest pain, but no palpitations or shortness of breath. (Tr. 379). The ALJ accurately noted that "[a] respiratory and cardiovascular examination did not reveal any abnormalities." (Tr. 26, 380).

Henderson underwent left carpal tunnel release surgery on January 26, 2012. (Tr. 26, 362). At a follow-up visit with Dr. Quinn, Henderson reported that he was doing "great," he did not sense any numbness in his hands and his grip strength improved. (Tr. 367). A physical examination confirmed that Henderson could move his wrists and digits "well" and his sensation was intact. (*Id.*). Prior to his surgery, Henderson's cardiologist, Dr. Dobies, cleared him for the procedure and reported that, aside from a past history of myocardial infraction, Henderson was

13

"otherwise doing well." (Tr. 318). On June 15, 2012, Dr. Dobies further noted that Henderson exhibited a 68 percent ejection fraction and no inducible ischemia during a recent stress test. (Tr. 26, 399). He described Henderson as "stable" and "doing well." (Tr. 399).

With respect to his mental impairments, psychiatrist James Rhyee, M.D., described Henderson as alert and coherent with average intelligence; his mood was depressed; he had racing thoughts with consequent poor concentration; he denied having suicidal thoughts; no gross delusions or hallucinations; and his judgment and insight were fair. (Tr. 407). Henderson reported that he was "relatively fine" before he was laid off from his job in April 2011. (Tr. 406). Dr. Rhyee's diagnostic impression was "[rule out] bipolar disorder, and depressed v. bipolar II disorder," and he assigned Henderson a Global Assessment of Functioning ("GAF") score of 55.[3] (Tr. 27, 407). Dr. Rhyee prescribed medication for bipolar and depressive conditions and referred Henderson to Dr. Sommerschield for psychotherapy. (Tr. 27, 407). In a mental source statement dated September 20, 2012, Harold Sommerschield, Ph.D, opined that Henderson had work-related limitations on account of "interpersonal conflicts with critical employers and anxiety due to depressed emotions" since June 2007. (Tr. 27, 409).

After evaluating the medical record, the ALJ found that Henderson could perform a range of light work consistent with the limitations imposed in the RFC. (Tr. 27). Notably, Henderson exhibited full range of motion and normal strength in both knees; the function of his left hand appeared to have markedly improved after the carpal tunnel release surgery; he had only moderate carpal tunnel in his right hand; he demonstrated full range of motion in his elbow wrists and fingers; and he possessed normal strength in both extremities. (*Id.*). Moreover,

---

[3] GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).

Henderson's cardiologist stated that he was "stable" and "doing well." (Tr. 399).

With respect to the mental impairments, the ALJ accorded significant weight to Henderson's GAF score of 55 since it was consistent with his reported daily activities and level of social functioning. (Tr. 27). On the other hand, the ALJ significantly discounted the opinion of Henderson's treating psychologist, because it was "not supported by the treatment notes, or the claimant's own work history." (*Id.*).

Moreover, the mere fact that certain aspects of the record may be consistent with the claimant's alleged impairment does not necessitate a finding that the claimant was fully credible regarding *the extent* to which his symptoms can be attributed to the impairment. Indeed, even where there is "objective medical evidence of an underlying medical condition … an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r. of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003). This is precisely why the ALJ must consider and weigh "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians … and any other relevant evidence in the case record" to determine if the claimant's claims regarding the severity of his symptoms are credible. *Soc. Sec. Rul.* 96-7, 1996 SSR LEXIS 4, at *3 (July 2, 1996); *see also* 20 C.F.R. §416.929. In this case, the ALJ adhered to this standard and determined, based upon a review of *all* of the medical evidence, as well as Henderson's testimony, that he was only "partially credible" to the extent his claimed level of physical and mental impairments did not exceed the RFC assessment. (Tr. 27). Thus, Henderson has not shown that the ALJ's overall evaluation of the evidence was in any way erroneous.

In view of the foregoing, the Court concludes that Henderson has not shown a

"compelling reason" to disturb the ALJ's credibility determination, *Smith*, 307 F.3d at 379, particularly where the ALJ provided a reasonable explanation for discounting Henderson's credibility, and that explanation is supported by substantial evidence.

### B. VE Hypothetical

The Court also finds that the ALJ's hypothetical to the VE appropriately accounted for his physical and mental limitations. There is no evidence in the record that would support imposing more restrictive limitations than those already specified in the ALJ's hypotheticals. Accordingly, the ALJ was not required to include such limitations in her hypothetical question to the VE. *See Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003) (an ALJ is only required to pose those hypothetical limitations that he finds credible); *see also Cookman v. Comm'r of Soc. Sec.*, No. 13-10687, 2013 U.S. Dist. LEXIS 176870, at *24-25 (E.D. Mich. Dec. 17, 2013) (same).

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's motion for summary judgment [9] be GRANTED and the Commissioner's decision be AFFIRMED.


Dated: April 22, 2016                         s/David R. Grand
Ann Arbor, Michigan                           DAVID R. GRAND
                                              United States Magistrate Judge


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and

recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 22, 2016.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
